[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11504
Non-Argument Calendar
_____

Agency No. A205-415-314

JUANA YESSENIA JUAN FRANCISCO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 28, 2019)

Before TJOFLAT, WILLIAM PRYOR and GRANT, Circuit Judges.

PER CURIAM:

Juana Yessenia Juan Francisco seeks review of the Board of Immigration

Appeal's ("BIA") order reversing the Immigration Judge's ("IJ") decision granting

her application for asylum and withholding of removal.  She now petitions this

Court for review, and we affirm the BIA's reversal of the IJ's decision.

Juan Francisco makes two arguments on appeal.  First, she argues that the

BIA "abused its authority by reviewing *de novo* the IJ's factual findings . . . instead

of applying the proper clear error standard."  Second, she argues that the harm she

suffered in Guatemala was on account of her membership in a particular social

group.[1]  We address these arguments in turn.

## I.

The BIA must review the factual findings of the IJ for clear error.  8 C.F.R.

§ 1003.1(d)(3); *Zhou Hua Zhu v. U.S. Attorney Gen.*, 703 F.3d 1303, 1314 (11th

Cir. 2013).  Under clear error review, the "BIA must find that, on balance, the

weight of the evidence so strongly militates against the IJ's finding that the BIA 'is

left with the definite and firm conviction that a mistake has been committed.'"

---

[1] The government argues that Juan Francisco has waived this argument by not making it
in her initial brief.  While it is true that Juan Francisco did not make this argument separately
from her argument that the BIA applied the wrong standard of review, the relief she requested—
reinstatement of the IJ's decision—was based on it.  In any event, this argument fails for the
reasons explained below.

*Zhou Hua Zhu*, 703 F.3d at 1315 (citation omitted).  "A factfinding may not be overturned simply because the Board would have weighed the evidence differently or decided the facts differently had it been the factfinder."  *Id.* (citation omitted).

Juan Francisco argues that the BIA failed to "articulate a factual basis that could support [its] conclusion," and instead "focused the basis for its reversal on the IJ's supposed reliance on *Matter of A-R-C-G-*."  It's true that the BIA criticized the IJ's supposed reliance on *Matter of A-R-C-G-*.[2]  It is also true, as Juan Francisco argues, that the IJ did not in fact rely on *Matter of A-R-C-G-*.  That said, it's unclear why the IJ brought up *Matter of A-R-C-G-* in the first place.[3]  Whatever the reason, the BIA's reversal of the IJ wasn't based on the IJ's supposed reliance on *Matter of A-R-C-G-*.  Rather, the BIA concluded that there was no record evidence to support the IJ's finding of a nexus between Juan Francisco's harm and a protected ground.  Whether that conclusion was correct is a question we answer below.  But as for the standard, the BIA reviewed for clear error.

---

[2] 26 I. & N. Dec. 388 (B.I.A. 2014).

[3] The IJ's analysis and application of *Matter of A-R-C-G-*, such as it was, went like this:

> While the facts differ from Matter of A-R-C-G-, 26 I&N Dec. 388 (BIA 2014), which has to do with a female not being able to leave a relationship in Guatemala, the violence that was described in A-R-C-G is very similar to that referred to in Matter of R-A-, 22 I&N Dec. 906 (A.G. 2001).  Going through he various remands, concluding in 24 I&N Dec. 629 (A.G. 2008). [sic]  The Court finds that the respondent has suffered from this persecution in the past, and finds that past persecution has occurred.

While it appears inaccurate to say that the IJ *relied* on *Matter of A-R-C-G-*, we don't fault the BIA for thinking as much.

II.

The Attorney General or the Secretary of the Department of Homeland Security has discretion to grant asylum to an alien who meets the Immigration and Nationality Act's definition of "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* § 1101(a)(42)(A). The asylum applicant has the burden of proving "refugee" status. *Id.* § 1158(b)(1)(B)(i). To satisfy this burden, the alien must show (1) past persecution on account of a statutorily protected ground or (2) a well-founded fear that the statutorily protected ground will cause future persecution. 8 C.F.R. § 208.13(b).

To show a nexus between the persecution and a protected ground, the applicant must prove that one of the protected grounds "was or will be at least one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i). The nexus requirement is not satisfied when the applicant merely shows that he or she was subjected to acts of private violence or criminal activity. *See Ruiz v. U.S. Attorney Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam) (citation omitted).

4

The BIA reversed the IJ's finding that Juan Francisco demonstrated a nexus between her alleged persecution and her membership in "one of the enumerated bases."[4]  Reviewing for clear error, the BIA concluded that there was no record evidence supporting the IJ's conclusion.  Our independent review of the record yields the same conclusion: though the harm Juan Francisco suffered was admittedly awful, it does not appear that she suffered it on account of her race or membership in a social group.  The IJ's conclusion to the contrary was clearly erroneous.

Juan Francisco testified at the IJ hearing that she was raped by a bus driver. When asked by the IJ whether she knew why the bus driver raped her, she said "I don't know now.  What happened was I was the last person to stay on the bus." When asked by government counsel why the bus driver raped her, Juan Francisco answered again, "I don't know. I don't know the reason why he harmed me that way."  Later in the hearing, Juan Francisco's counsel even admitted that "the [bus driver's] crime does not fall under one of the five enumerated grounds of asylum." Far from "overrid[ing] or disregard[ing] evidence in the record" or relying "simply on its own interpretation of the facts," *Matter of A-B-*, 27 I. & N. Dec. 316, 341

---

[4] The IJ was not specific about which of the protected grounds—or "enumerated bases"—supported his decision.  But he did mention that "racial intolerance remains rampant in Guatemala, particularly in [Juan Francisco's] area" and that her physical appearance "puts her in a categorization that she could be socially distinct," so we assume the IJ concluded that she was persecuted on account of her race or membership in a particular social group.

(A.G. 2018) (citation omitted), the BIA carefully reviewed the record and found that no evidence supported the IJ's decision.

## III.

The BIA reviewed the IJ's decision for clear error.  It concluded that the IJ erred by finding that Juan Francisco was persecuted based on her race or membership in a specific social group.  The BIA was correct, so we accordingly affirm its decision and deny Juan Francisco's asylum petition.[5]

**PETITION DENIED**.

---

[5] Juan Francisco also petitioned for withholding of removal under 8 C.F.R. § 208.16(b). However, because she failed to satisfy the evidentiary standard for asylum, her withholding-of-removal claim necessarily fails.  *D-Muhumed v. U.S. Attorney Gen.*, 388 F.3d 814, 819 (11th Cir. 2004) (noting that the standard for withholding of removal is "more stringent than the 'well-founded fear' standard for asylum") (citation omitted).